IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORI ANN G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 3402 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, almost seven years ago in April of 2017. (Administrative Record (R.) 186-87). She claimed that she had been disabled since September 12, 2016 (R. 186) due to a back injury, high blood pressure, pre-diabetes, obesity, depression, and anxiety. (R. 211). Over the next three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) back on June 10, 2020, and the case was fully briefed as of April 19, 2021. [Dkt. ## 16, 21, 22]. After another two and a half years went by, the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on November 29, 2023. [Dkt. ##26, 27, 29]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

After an administrative hearing, at which the plaintiff, represented by council, testified, along with a vocational expert, the ALJ found that the plaintiff had the following severe impairments: spine disorders, hypertension disorder, obesity and dysfunction of the left hip. (R. 19). The ALJ determined that plaintiff's other impairments – dysfunction of the right shoulder, radiculitis, depression disorder and anxiety disorder – were not severe impairments. (R. 19-20). The ALJ explained that the plaintiff had only mild limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R. 20). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 4.00 (hypertension). (R. 22-23). The ALJ then found that the plaintiff had the residual functional capacity to perform sedentary work with a number of additional limitations:

> no more than occasional climbing of ramps and stairs, never climbing ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching and crawling and includes limitations of assuming no position for longer than forty five minutes and if the [plaintiff] needs to sit stand or walk for forty five minutes at one time, she must be allowed to assume a different position for five minutes before resuming the prior position without abandoning her workstation or losing concentration on her assigned work duties.

(R. 23).

The ALJ then summarized the plaintiff's allegations, noting that she said her back worsened after her second surgery in May 2017, and that she has difficulty sitting for more than forty-five minutes and standing for more than twenty minutes, and is unable to bend, stoop, or kneel. She also said she has pain in her lower back and in her left hip that radiates down her left leg and makes her

2

toes numb. The plaintiff allowed that she can feed her dogs, prepare simple meals, and feed her grandchild and change his diapers. But, she added that she is unable to go upstairs, cannot bend down to get clothes to do laundry, and cannot put her grandchild in the crib. She uses a walker and a cane that were not prescribed. She has pain constantly even when taking pain medication. (R. 24). The ALJ then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. (R. 24-25).

The ALJ then discussed the medical evidence, beginning with plaintiff's hip impairment. A March 2016 left hip x-ray showed mild bony spurring, but no other deficits. Her treating physician recommended that she keep walking as best as she can and try and use the walker for balance purposes. A December 2017 MRI of the plaintiff's left hip noted mild insertional tendinosis of the gluteus minimus and gluteus medius tendons, but no tendon tear or retraction, no evidence of labral tear, and no focal high-grade chondromalacia or reactive marrow changes. Objective findings noted full range of motion in her left hip and left hip internal manipulation rotation was negative. She was able to ambulate and did not require the use of a walker for longer than one year. (R. 25).

On March 20, 2016, the claimant had magnetic resonance imaging of the lumbar spine which noted mild to moderate disc degeneration and left paracentral broadbased disc protrusion at L4-5, with deformity of the anterolateral aspect of the thecal sac and probable compression of the left L5 nerve roots. There was also displacement of the lumbar intervertebral disc, intervertebral disc degeneration in the lumbar region, lumbago and thoracic or lumbosacral neuritis or radiculitis. After

3

epidural injections failed, the plaintiff underwent a lumbar fusion in May 2017. Following surgery and three weeks of physical therapy pain decreased, but returned in September of 2017. Plaintiff was treated with additional epidural injections with minimal relief. In January 2018, she was found to have tendonitis and right sided labral tear of the right hip. She was taking Norco for breakthrough pain. Her hip manipulation was positive on the right side and negative on the left, her straight leg raises were negative bilaterally, her facet loading was positive on both sides bilaterally, strength was 4-5/5 and sensation was intact. (R. 26). Plaintiff's BMI was 41.53. (R. 27).

The ALJ then considered the medical opinions. He found the state agency initial and reconsideration level opinions that the plaintiff could perform at a sedentary level persuasive as they were consistent with the medical evidence, but the ALJ felt additional postural restrictions were consistent with her continuing care. He found the opinions of the state agency's psychological examiners that plaintiff's mental impairments were non-severe persuasive as they were based on the lack of treatment. The ALJ found the opinion of Marcia Smith N.P. that the plaintiff can sit no more than twenty minutes at one time and less than two hours a day unpersuasive as it was not consistent with the plaintiff's testimony that she could sit for forty-five minutes if she pushed herself and the fact that she cares for her grandchild. (R. 27).

The ALJ then relied on the testimony from the vocational expert that a person of the plaintiff's age, education, work experience and assessed limitations could perform the plaintiff's past work as a customer services representative as generally performed. Accordingly, the ALJ found the plaintiff not disabled and not entitled to benefits under the Act. (R. 28).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)("... the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Social Security.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[2] Much more recently, the Seventh Circuit

---

[2] Prior to Sarchet's "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent

(continued...)

explained that "the 'logical bridge' language in our case law is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

Nonetheless the ALJ did not do quite enough here.

### III.

The plaintiff has a laundry list of issues with the ALJ's decision, so this Opinion will by necessity be somewhat wide-ranging as the Opinion makes its way through the plaintiff's issues. They are:

1. The ALJ did not comply with the requirements of 20 CFR 404.1520c, the regulation that applies to weighing opinion evidence, in evaluating the opinion of Nurse Practitioner Marcia Smith.

2. The ALJ failed to properly analyze plaintiff's need to lie down.

3. The ALJ failed to assess plaintiff's obesity and other impairments in combination.

4. The ALJ failed to properly discuss off-task time, absenteeism, and the need to alternate positions at will and use a walker in the RFC analysis.

5. The ALJ failed to base his decision on a preponderance of the evidence, instead evaluating whether the plaintiff's allegations were "entirely consistent with the medical evidence."

6. The ALJ failed to discuss whether plaintiff's statements about activities of daily living were consistent with her other statements and the medical evidence.

7. The ALJ failed to properly evaluate plaintiff's treatment history.

---

²(...continued)
opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

8

[Dkt. #15]. It's a mixed bag, and some of these arguments might have easily been left on the cutting room floor. But, at least a couple have some traction, and a remand is necessary.[3]

**A.**

We begin with the ALJ's discussion of N.P. Smith's opinion. She filled out a form from the plaintiff's attorney on April 24, 2018. (R. 890-920). She wrote that she had been seeing the plaintiff every month or two for two years. Plaintiff's symptoms were fatigue, lower back pain radiating down the left leg, sleep disturbance, and depression. Under "objective signs," the nurse checked reduced range of motion, impaired sleep, tenderness, swelling, muscle spasm, muscle weakness, abnormal gait, and positive straight leg rasing. Nurse Smith indicated that the plaintiff was capable of low stress jobs. (R. 890). But, she also indicated that the plaintiff could sit or stand for no more than 20 minutes at a time, and sit and stand for a total of two hours in an eight-hour workday. Plaintiff also had to walk for ten minutes every twenty minutes, had to change positions every twenty minutes for at least ten minutes, and also needed a ten minute rest period before returning to work. Additionally, in a sedentary job, Nurse Smith said the plaintiff had to keep her legs elevated for 90% of the workday. (R. 891). The plaintiff could frequently lift up to ten pounds, and occasionally lift up to twenty pounds. (R. 891). She could rarely twist, crouch, or climb stairs, and could never stoop

---

[3] A plaintiff's counsel's desire to take a "kitchen sink" approach, *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000), in the hopes that one of a half-dozen or more arguments might just stick and earn a remand is all too common. But it is a mistake to assume that more is better. The laser-light show approach is ultimately detrimental and does not increase in the slightest one's chance of prevailing. Quite the contrary. *See Pierce v. Visteon Corp.*, 791 F.3d 782, 788 (7th Cir. 2015); *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011)(brief that presents a dozen claims of error "effectively ignor[es] our advice that the equivalent of a laser light show of claims may be so distracting as to disturb our vision and confound our analysis."); *Fifth Third Mortgage Co. v. Chicago Title & Trust*, 692 F.3d 507, 509 (6th Cir. 2012); *Rehman v. Gonzales*, 441 F.3d 506, 508-09 (7th Cir. 2006). *See also* Matthew Kennelly, *Over-Arguing Your Case*, 40 LITIGATION 41 (Winter 2014). It looks like that may have been the case here during the period before the parties consented to the jurisdiction of a magistrate judge.

or climb ladders. Nurse Smith thought the plaintiff would miss more than four days of work a month. (R. 892).

The ALJ didn't think much of Nurse Smith's opinion and, problematically, didn't say much about it either. All he said was that he found "the opinion of Marcia Smith N.P. that the [plaintiff] can sit no more than twenty minutes at one time and less than two hours a day unpersuasive as it is not consistent with the [plaintiff's] testimony that the [plaintiff] can sit for forty-five minutes if she pushes her self and the fact that she cares for her grandchild. (Exhibit 15F)." (R. 27). That explanation falls far short of what an ALJ is supposed to do. Under the applicable regulations, an ALJ must evaluate the persuasiveness of medical opinions in light of several factors, including "supportability" (how well supported an opinion is by medical evidence and the explanations given in the opinion) and "consistency" (how consistent an opinion is with other evidence in the record). See 20 C.F.R. § 404.1520c(b)(2),(c)(1)-(2). "Consistency" and "supportability" are the two "most important factors" to be considered when it comes to weighing the persuasiveness of a medical opinion. 404.1520c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). ALJs don't have to explain how they consider all of the factors, but they do have to "explicitly explain" why an opinion is consistent with the record as a whole and how well it is supported by medical evidence. *Bakke*, 62 F.4th at 1067. The ALJ said that Nurse Smith's opinion wasn't consistent with the record because it was contradicted by a couple of snippets of plaintiff's testimony. But the ALJ provided absolutely no discussion of how or whether Nurse Smith's opinion was or wasn't supported by medical evidence. So, the ALJ attempted to do just one of the two things he was required to do and skipped the other one altogether.

The Commissioner argues that the ALJ's discussion of consistency alone was sufficient,

10

explaining that "two valid reasons" – plaintiff's testimony about sitting and taking care of her grandchild – "were enough" [Dkt. #21, at 5]. That's not what the regulations say, of course, because, again, they require a discussion of not only consistency with the record as a whole but also a discussion of supportability. Nonetheless, for the sake of argument, we examine those "two valid reasons." At the administrative hearing, the ALJ asked the plaintiff why she thought she could no longer work:

> A: I can't sit very long, can't stand very long. I don't bend.
>
> Q: How long is very long you say you can't sit?
>
> A: I can maybe push sitting for 45 minutes if that but it's painful to stand back up because it's stiff.
>
> Q: And how about sitting or standing? You said you get pain. How often you stand before you would need to change positions?
>
> A: About 20 minutes.

(R. 44-45).

So, the plaintiff's testimony was, essentially, that if she *pushed* herself, she could *maybe* sit for forty-five minutes before her pain required that she had to stand up. Without more of an explanation from the ALJ, I do not see how that testimony scuttles Nurse Smith's opinion that plaintiff could sit for twenty minutes at a time during an eight-hour workday. Obviously, if a person has to *push* herself to sit for forty-five minutes, she's not going to be able to do that over and over, all day, five days a week. See SSR 96-8p ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work

schedule."); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015).

A bit later in the hearing, the ALJ interrogated the plaintiff regarding what she meant by saying she took care of her grandchild:

> Q: My question to you was what were you doing because you don't just tell your doctor you're rasing your grandson and then you're doing nothing, so tell me the activities you were able to do, not what mom was doing, not what your 14-year old was doing, but what you were doing? That's what I want to hear because it's your hearing, not their hearing, not your mom's hearing. I want to hear what you were able to do and what you were doing?
>
> A: I got his bottles, changed his diaper.
>
> Q: Would you put him in his – did he have a crib?
>
> A: Yes.
>
> Q: Did you put him in the crib to go to bed?
>
> A: No.
>
> Q: How did he get in the crib to bed?
>
> A: I had help.

(R. 49). So, as the ALJ conceded in his opinion, all the plaintiff does is "get[] him his bottles and change[] his diaper . . . ." (R. 24). Without more of an explanation from the ALJ, the court cannot see how this limited activity conflicts with Nurse Smith saying the plaintiff can only sit or stand for twenty minutes at a time. Plaintiff could alternate positions at will and still be able to perform the rather limited tasks the ALJ focused on to supposedly undermine Nurse Smith's opinion.

As such, neither of the ALJ's bases for rejecting Nurse Smith's opinion in terms of consistency are logically sound. And, as already noted, the ALJ didn't even bother to assess Nurse

Smith's opinion in terms of supportability. So, the ALJ missed the mark by a lot, and a remand is necessary so he can take another look at Nurse Smith's opinion and follow the regulations in doing so.

**B.**

The plaintiff also argues that the ALJ completely ignored her allegation that she had to lie down during the day to alleviate her pain. The ALJ elicited that testimony from the plaintiff at the hearing:

> Q: What position are you in throughout the day like in what I mean as posturally like sitting, standing?
>
> A: Laying down.
>
> Q: How long has that been going on for?
>
> A: It's gotten worse since December but I was – after surgery actually in May. It's –
>
> Q: Do you just lie down all day?
>
> A: Most of the time, yes.

(R. 56). Then the ALJ went into whether the plaintiff needed to elevate her feet, remarking that he hadn't seen any reference to that in the medical evidence. (R. 57). Plaintiff's counsel said that "the bigger issue is that she's lying down," to which the ALJ replied, "[o]h, that's fine." (R. 58).

Obviously, lying down is a deal breaker in terms of working. So, that was probably the most significant allegation the plaintiff made at the hearing. But, when the ALJ discussed the plaintiff's allegations in his opinion, he made no mention of it:

> At the hearing, the claimant stated she is unable to work due to her back pain. She stated she has difficulty sitting for long periods and standing for long periods of time. She is unable to bend. She is unable to sit longer than forty-five minutes or stand longer than twenty minutes before needing to change positions. She has pain in her

13

> lower back and in her left hip. Her pain radiates down her left leg and makes her toes numb. She stated she is able to feed her dogs and prepare simple meals. She is unable to go upstairs and cannot bend down to get clothes to do laundry; she can get laundry out but not put it in the machine. She stated that she fell at the end of November in 2017. She stated that she is helping to raise her grandchild. She gets him his bottles and changes his diaper; she stated she does not place him in his crib. In her Function Reports, the claimant reported that she could not sit or stand for long periods of time (Exhibits B3E and BlOE). She noted that she cannot lift nor bend, stoop or kneel and she has pain constantly even with pain pills and her energy level is nothing and she does not want to do anything with her daughter (Exhibit BlOE). She reported to cooking and making meals for her husband and daughters, and taking care of her dogs (Exhibits B3E and BlOE). She reported to being able to take care of her personal hygiene (Id.). She reported being able to drive and grocery shop (Id.). She noted that she used a walker and cane that were not prescribed (Id.). She noted that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, complete tasks, concentrate and get along with others (Id.). She noted being able to walk one block/twenty to thirty minutes before needing to stop and rest (Id. ).

(R. 24).

The ALJ must have thought the plaintiff was lying about lying down, but he didn't even mention it. The ALJ could not simply ignore such an allegation. *See, e.g., Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)(". . . no employer is likely to hire a person who must stop working and lie down two or three times a day . . . ."); *Justin C. v. Kijakazi*, No. 20 C 2149, 2022 WL 4482760, at *3 (N.D. Ill. Sept. 27, 2022)("The Court is left with [a] critical and dispositive question[]: . . . did the ALJ consider Claimant's subjective complaint that he need to lie down, and if so, why did she reject it? Nowhere in her opinion does the ALJ answer these questions."); *Schuler v. Kijakazi*, No. 3:21-CV-65-JPK, 2022 WL 3700030, at *6 (N.D. Ind. Aug. 26, 2022)("The ALJ needed to at least "consider" the need to lie down . . . ."); *Brenda L. v. Kijakazi*, No. 3:21CV859, 2022 WL 2763561, at *11 (N.D. Ind. July 15, 2022)("Among the functional restrictions that an ALJ must consider are those that stem from a claimant's need to lie down during the day."). On remand, the ALJ needs to

14

consider this allegation and address it one way or the other.

## C.

From there the plaintiff moves on to the fact that she is morbidly obese. [Dkt. #15, at 8-10]. She argues that the ALJ failed to consider her obesity in combination with her other impairments. But, that charge is not accurate. Indeed, the ALJ noted the plaintiff's history of obesity and said he had:

> considered the impact of the [plaintiff's] obesity on her other impairments and f[ou]nd that a sedentary exertional level with further postural limitations of no more than occasionally climbing of ramps and stairs and never climbing ladders, ropes or scaffolds and occasionally balancing, stooping, kneeling, crouching and crawling and not assuming a position longer than forty five minutes at one time and being allowed to assume a different position if she needs to sit, stand or walk for forty five minutes at one time would accommodate any complications she has as a result of her obesity.

(R. 27). Thus, the ALJ did consider the effects of plaintiff's obesity and folded this into his residual functional capacity determination. And, he relied on the opinions from the state agency reviewing physicians who *also* considered the effects of plaintiff's obesity. (R. 76, 88, 92-93). That's sufficient. *See, e.g., Bakke*, 62 F.4th at 1070 (". . . the ALJ viewed [plaintiff's] obesity as a cause of worsening symptoms, to be considered throughout the evaluation. And the ALJ relied on expert medical opinions, each of which incorporated [plaintiff's] obesity in its consideration of his symptoms, further guaranteeing that [plaintiff's] obesity was not ignored"). Moreover, the plaintiff does not point to any medical evidence, nor does the record reflect, that she suffers from limitations based on her obesity. *See, e.g., Brown v. Colvin*, 845 F.3d 247, 252–53 (7th Cir. 2016); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). The fact that one examining physician mentioned that the range of motion in her hips, knees, and ankles was limited by body fat (R. 1046), does not mean plaintiff cannot perform sedentary work, and plaintiff makes no effort to explain how it would.

**D.**

Next, the plaintiff complains that the ALJ failed to properly discuss off-task time, absenteeism, and the need to alternate positions at will and use a walker in his residual functional capacity analysis. [Dkt. #15, at 10-11]. But, an ALJ only need concern himself with "limitations supported by the medical record." *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *Reynolds*, 25 F.4th at 473; *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). As the ALJ mentioned, the plaintiff conceded that neither a cane nor a walker was prescribed. (R. 24). And, the plaintiff said she used a walker "at times," not a cane. (R. 235). The only evidence the plaintiff cites regarding the need to take breaks and absenteeism are her own allegations – not medical evidence – and Nurse Smith's opinion. (R. 234, 291, 891). The ALJ was not required to accept either. *See, e.g., Durham*, 53 F.4th 1089, 1096 (7th Cir. 2022)(". . . there is no evidence in the record to support a time-off-task limitation."). While the ALJ failed to follow the regulations when he rejected Nurse Smith's opinion, that is not to say that it was consistent with the medical evidence or supported by her own treatment notes. That is for the ALJ to decide and explain on remand.

**E.**

From there the plaintiff moves on to complain that the ALJ applied the wrong evidentiary standard. In this regard the plaintiff spends two full pages [Dkt. #15, at 11-13] attacking the ALJ's use of the all-too-familiar boilerplate that the plaintiff's allegations regarding her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (R. 25). While this phrasing conflicts with the regulations, it flies in the face of the proper evidentiary standard, 20 C.F.R § 404.953(a), ALJs inexplicably continue to employ it in Opinion after Opinion. The Agency seems to cling to this and other templates like threadbare security blankets. *See Bjornson v. Astrue*,

671 F.3d 640, 645 (7th Cir. 2012)("The government regards the "template" as an indispensable aid to the Social Security Administration's overworked administrative law judges. Yet when we asked the government's lawyer at argument what the "template" means, he confessed he did not know."). But, by the time the parties consented to jurisdiction here, the plaintiff's brief was about three years old. Since then, the Seventh Circuit has made it clear that the "not entirely consistent" language is not a remandable offense. *See, e.g., Martinez v. Kijakazi*, 71 F.4th 1076, 1079 n.2 (7th Cir. 2023)(rejecting the argument that the ALJ's use of the "not entirely consistent" language indicated the ALJ was adopting a different evidentiary standard); *Gedatus*, 994 F.3d at 900 ("But we do not read the ALJ's language [as a failure to use the appropriate preponderance-of-the-evidence standard]. It is clear to us, given the context, that the ALJ merely used a polite way to say the weight of the evidence did not support all her claims."). But, long before that, and well before the plaintiff filed her brief, the Seventh Circuit made it clear that the ALJ's use of boilerplate does not automatically undermine or discredit the ALJ's ultimate conclusion. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013); *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). With all deference, an argument like this does nothing to move the needle toward a remand and really serves only to bog down review.

### F.

Next, the plaintiff argues that the ALJ did not discuss whether the plaintiff's statements about her daily activities were consistent with her other allegations and the medical evidence. But, the ALJ went through a summary of the plaintiff's daily activities at some length (R. 20-21, 24), and then addressed plaintiff's limitations as he went through the medical evidence pertaining to each of her impairments. (R. 25-27). In short, the ALJ considered the plaintiff's activities, as required, *Grotts*

17

*v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *DuCharme v. Kijakazi*, No. 21-2204, 2022 WL 3287974, at *3 (7th Cir. Aug. 11, 2022)("The ALJ simply described these activities in its subjective symptom analysis, which is exactly what ALJs are supposed to do."), and considered them in tailoring limitations. *See, e.g., Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *2 (7th Cir. Oct. 11, 2022); *Gedatus*, 994 F.3d at 903 (". . . the point remains that he did discuss these activities and he was aware of them when he considered her physical symptoms, as the district judge noted. An ALJ need not rehash every detail each time he states conclusions on various subjects."). While the ALJ might not have assessed each specific activity against various pieces of medical evidence, he was not required to do so. *Grotts*, 27 F.4th at 1278 (7th Cir. 2022)("An ALJ need not discuss every detail in the record as it relates to every factor."); *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("we note that an ALJ's credibility findings need not specify which statements were not credible"). So, again, the ALJ did enough here.

### G.

Lastly, the plaintiff contends – correctly – that the ALJ failed to adequately assess the plaintiff's course of treatment. The plaintiff suffers from lower back issues that are coupled with, and of course exacerbated by, her morbid obesity. An MRI on March 30, 2016, showed mild to moderate disc degeneration and broad-based disc protrusion at L4-5 with compression of the L5 nerve roots and segments of both L4 nerve roots in contact with the bulging disc. (R. 346-47, 359-60). Plaintiff's treating doctors first tried a course of multiple steroid injections on April 21, 2016, May 12, 2016, June 2, 2016, June 28, 2016, (R.321-327). When those only provided limited relief, the next step was surgery. In November 2016, plaintiff underwent an L5-S1 discectomy (R. 562-65). That procedure apparently failed. Plaintiff had another injection on March 4, 2017 (R. 353), but

then, it was back to surgery. She had a lumbar fusion on May 4, 2017. (R. 669, 673-75). But her pain returned and she had yet another injection on November 9, 2017. (R. 887-88). And, through all this, her doctors were prescribing Norco for pain. That's the kind of medical history that requires a fairly sturdy "logical bridge" if the ALJ is going to take us to a finding of "not disabled." The treatment record that tends to support a plaintiff's allegations of pain, not detract from them. *See, e.g., Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)(epidural injections; the exacerbating effect of obesity; and the strong narcotics she was taking to treat her pain); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014)(". . . a claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible."); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004) (physicians' prescription of strong pain medications substantiated claimant's pain allegations).

Here, unfortunately, the ALJ said nothing more than: "[t]he nature and scope of the claimant's treatment has remained relatively consistent and the claimant's subjective complaints are not consistent with the objective medical evidence." Indeed, the treatment course was "relatively consistent": consistently serious, with surgeries, injections and narcotics. It seems that ought to have made some sort of impression on the ALJ, but we don't know what it was. On remand, the ALJ will have to provide some inkling as to what he thought about the plaintiff's treatment history beyond saying it was "relatively consistent."

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #20] is denied and this case is remanded to the Commissioner for further proceedings.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/20/24